UNITED STATES DISTRICT COURT
OF THE CENTRAL DISTRICT OF ILLINOIS (PEORIA)



FILED
SEP 2 7 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN WILLIAMS, # B 12524 | ] |
| Petitioner-Defendant, | ] |
| v. | ] Civil No. 07-1255 |
| ROGER E. WALKER, DIRECTOR, Illinois Dept. Of Corr. | ] |
| Respondent-Plaintiff. | ] |

### MEMORANDUM OF LAW IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. Sec. 2254

As a matter of introduction, the Petitioner respectfully submits that the events which transpired in the instant case constituted a denial of the Petitioner's right to effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution. These errors were not merely procedural, but substantially infringed upon the Petitioner's constitutional rights. At a minimum, the Petitioner requests a hearing be held on these issues.

### STATEMENT OF THE ISSUES

I.  The Petitioner was Denied his Sixth Amendment Right to Effective Assistance of Counsel during Plea Negotiations, Resulting in an Involuntary and Unknowing Guilty Plea.

II. The Petitioner was Denied his Sixth Amendment Right to Effective Assistance of Counsel when Counsel Failed to File a Notice of Appeal.

III. The Petitioner Is Entitled to an Evidentiary Hearing on these Matters.

### STATEMENT OF JURISDICTION

Federal law provides a safety net for defendants whose constitutional rights have been violated. Title 28 U.S.C. Sec. 2254 is a statute that provides an avenue for redress of state court federal constitutional violations in a federal court. "[A] district court shall entertain an application

for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. Sec. 2254(a). The Petitioner feels that his best opportunity to obtain fair and substantial justice is in the federal court system.

## ARGUMENT

In order to succeed in a Sec. 2254 motion, a petitioner must show that the adjudication of a claim in state court either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented . . ." 28 U.S.C. Sec. 2254 (d)(1), (2). The Constitution, as the framework from which all Federal law springs, must not be violated as applied to the Petitioner.

In order to raise an issue in a Sec. 2254 motion, an individual must exhaust all other state remedies on a given issue, which ultimately requires that the issue be appealed to the state Supreme Court. "An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the court of the State[.] * * * An applicant shall not be deemed to have exhausted the remedies available in the courts of the State * * * if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. Sec. 2254(b), (c).

In his petition for post-conviction relief filed with the Circuit Court of Cook County, Illinois, the Petitioner raised the first and second of the substantive issues as raised herein. These issues were then pursued to the Supreme Court of Illinois. As these issues were litigated to the

highest court in the state, they have been preserved to be raised in this Sec. 2254 motion. The remaining substantive issue, to wit, that the Petitioner was denied his right to due process when the state circuit court failed to conduct an evidentiary hearing on his post-conviction motion, could not have been raised previously. As the state courts have already decided this issue, it would be frivolous to raise the issue once again in state court. Under 28 U.S.C. Sec. 2254(b)(1)(B), an application for a writ of habeas corpus may be granted if the issues raised were exhausted in state court *or* there is no available state corrective process. As such, this issue is also properly raised at this time.

I. **The Instant Petition Must Be Considered Timely Filed and Must Therefore Be Considered on Its Merits.**

The Petitioner was sentenced on March 27, 2001. He attempted at that time to pursue a direct appeal, but counsel failed to comply with his request to file a notice of appeal. (Williams Affidavit). Within one year of the date he was sentenced, the Petitioner filed a pro se motion to withdraw his guilty plea. After this motion was denied, the Petitioner filed a state petition for post conviction relief on October 27, 2003. This petition was dismissed on January 15, 2004 without the benefit of an evidentiary hearing, and in violation of the Petitioner's right to due process. The Petitioner appealed the court's decision, and the appellate court affirmed on April 18, 2006. The Petitioner then pursued his claims to the Supreme Court of Illinois, which denied his petition for leave to appeal on September 27, 2006.

The AEDPA also provides that a Sec. 2254 petition must be filed within one year from the date a conviction "became final by a conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. Sec. 2244(d)(1)(A). But, the "time during which a properly filed

application for State post-conviction" action "is pending, shall not be counted toward" the one-year limitation period. Id. at Sec. 2244(d)(2).

In the instant petition, the Petitioner argues that he was denied his right to due process when the state court denied his post-conviction claims without conducting an evidentiary hearing. This denial did not occur until January 15, 2004, the date of the court's order. From that point, the Petitioner pursued his claims to the Supreme Court of Illinois. That court issued a final ruling, denying the Petitioner's petition for leave to appeal on September 27, 2006. As such, that is the date from which the Petitioner's one year time limitation should be deemed to have begun to run. Prior to the court's order on January 15, 2004, this issue did not exist. From that point, the Petitioner's state action was pending until September 27, 2006. As such the one year time period was tolled until that date, and the Petitioner has until September 26, 2007 to file a petition under 28 U.S.C. Sec. 2254.

The additional issues should also be considered to be timely raised in this petition. As noted previously, the Petitioner first filed a state action on March 26, 2002. The time between his sentencing and the filing of that motion should not count against the one year time limitation. If a direct appeal would have been pending during this time, the one year time period would not have begun to run until after the appeal was completed. As discussed below, counsel's ineffectiveness prevented the Petitioner from pursuing a direct appeal during this time period.

The one-year time period of limitations in Sec. 2244(d)(1) can be equitably tolled. Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999) (citing Davis v. Johnson, 158 F.3d 806, 810-812 (5th Cir. 1998)). "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." Davis, 158 F.3d at 810 (citation and internal

quotation marks omitted). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (citing Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996)). The Coleman court further determined that dismissing a habeas petition is a serious matter and that courts should look to the particular facts and circumstances of a case in applying the doctrine of equitable estoppel. Coleman, 184 F.3d at 402. As a general rule, equitable estoppel operates where it is necessary to preserve a petitioner's claims "when strict application of the statute of limitations would be inequitable." Davis, 158 F.3d at 810-811.

In the instant case, strict application of the statute of limitations would certainly be inequitable. First, the Petitioner's time period would not have begun so early, had counsel filed the notice of appeal, as the Petitioner had requested. Had that action been taken, the one year time limitation would not have expired so early. Second, despite the limitation on pursuing federal habeas relief, the Petitioner should have had the opportunity to seek state review of his claims. Unfortunately, the state courts have declined, in violation of the Petitioner's right to due process, to afford the Petitioner's constitutional claims the consideration they deserve, as these issues have been decided without even conducting an evidentiary hearing. Now, the Petitioner has only the federal courts to turn to in order to obtain proper review of these issues. Strict adherence to the one year limitation would effectively deny the Petitioner of the opportunity to have these issues decided on their merits. This would certainly be inequitable. As such, the doctrine of equitable estoppel should be applied in order to allow this court to consider the claims

5

which were previously denied by the state courts. The Petitioner therefore submits that this Court must issue a finding based upon the merits of the issues raised herein.

II.　**The Petitioner's Right to Due Process of Law, as Guaranteed by the Fifth Amendment to the United States Constitution, Was Denied when the State Court Denied Relief on his Petition for Post Conviction Relief, Without Conducting an Evidentiary Hearing.**

In evaluating due process claims, this court inquires whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusttes, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). As stated by Justice Frankfurter, due process:

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just. Solesbee v. Balkcom, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950).

There can be little doubt that the right to pursue post-conviction relief is deeply ingrained in the American system of justice, as the right to such a filing was expressly protected in the United States Constitution. The Suspension Clause of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. 1, Sec. 9, cl. 2. n1. The present day writ of habeas corpus, the "common law world's 'freedom writ'" and that "highest safeguard of liberty," Smith v. Bennett, 365 U.S. 708, 712, 6 L. Ed. 2d 39, 81 S. Ct. 895 (1961), traces its origins to English laws dating back to 1166. See Michael O'Neill, On Reforming the Federal Writ of Habeas Corpus, 26 Seton Hall L. Rev. 1493, 1495-96 (1996) (citing Assize of Clarendon, enacted in reign of King Henry II). The "great object of [the writ of habeas corpus] is

the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error, to examine the legality of the commitment." Ex Parte Watkins, 28 U.S. 193, 202, 7 L. Ed. 650 (1830). The writ, along with the right to trial by jury, is among the most fundamental features distinguishing our free society from a police state, where unbridled and arbitrary imprisonment is used as an instrument of tyranny. See Johnson v. United States, 333 U.S. 10, 17 n.8, 92 L. Ed. 436, 68 S. Ct. 367 (1948).

In Ex Parte Bollman, 8 U.S. 75, 2 L. Ed. 554 (1807), Chief Justice John Marshall stated that the habeas provisions of the Judiciary Act were a result of Congress' perceived "obligation of providing efficient means by which this great constitutional privilege should receive life and activity," Id. at 95, thus implicitly rejecting a view that the Suspension Clause is intended only to protect the habeas jurisdiction of the states from federal encroachment. Marshall's opinion "gives no hint that the Clause rests on federalism, as opposed to individual liberty and separation-of-powers, concerns." Id. at 876.

By the time of the Civil War and Reconstruction, Supreme Court jurisprudence had provided some answers to questions about the meaning of the Suspension Clause. In 1867, Congress made the writ generally available in "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, 14 Stat. 385.

Near the middle of this century, the U.S. Supreme Court interpreted that provision to allow a final judgment of conviction in a state court to be collaterally attacked on habeas. See, e.g., Waley v. Johnston, 316 U.S. 101, 86 L. Ed. 1302, 62 S. Ct. 964 (1942) (per curiam); Brown v. Allen, 344 U.S. 443, 97 L. Ed. 469, 73 S. Ct. 397 (1953). The Court has assumed that the

7

Suspension Clause of the U.S. Constitution refers to the writ as it exists today. See <u>Swain v. Pressley</u>, 430 U.S. 372, 384 51 L.Ed.2d 411, 97 S.Ct. 1224 (1977)(Burger, C. J., concurring in part and concurring in judgment).

More recently, scholars have demonstrated that both the Supreme Court and the lower federal courts in the antebellum period entertained habeas petitions attacking the constitutionality of criminal statutes and convictions, at least where no other procedural mechanism existed to provide federal review of a prisoner's federal claims. *See, e.g.*, James S. Liebman, <u>Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity</u>, 92 Colum. L. Rev. 1997, 2059, 2092-93 (1992).

In the instant case, the circuit court effectively denied the Petitioner of the right to post-conviction relief, by denying his petition without conducting an evidentiary hearing. This denial was then affirmed by the appellate court. (Order, 1/15/04; Order, 4/18/06). The circuit court, followed by the Appellate Court of Illinois, denied the Petitioner's post-conviction claims, which are also included in the present Petition for Writ of Habeas Corpus, as being without merit. (Order, 1/15/04; Order, 4/18/06). The circuit court's order was entered without affording the Petitioner an evidentiary hearing whereby to present these claims. (Order, 1/15/04). This denial of an evidentiary hearing constituted a denial of the Petitioner's right to due process.

Clearly, there can be no denial of the right to due process on collateral review, and therefore reliance upon the denial of this right will not stand to deny habeas corpus petitions upon procedural grounds. As the Petitioner was unconstitutionally denied his right to due process of law when the circuit court denied hearing his habeas corpus issues on the merits, the Petitioner

submits that the issues raised in state court, but not adequately considered, should be permitted to be raised in this petition.

III. The Petitioner Was Denied his Sixth Amendment Right to Effective Assistance of Counsel During Plea Negotiations, Resulting in an Involuntary and Unknowing Guilty Plea.

The Sixth Amendment to the U.S. Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defense. The High Court has stated, "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Furthermore, the Court has recognized that "the right to counsel is the right to *effective* assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970) (emphasis added).

To succeed on a claim of ineffective assistance of counsel, a defendant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2055, 2063 (1984). The Strickland Court went on to hold that for a defendant to prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. Id. A defendant must demonstrate that the representation "fell below an objective standard of reasonableness" and "a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, 466 U.S. at 688, 694.

A. Counsel's Representation Fell Below an Objective Standard of Reasonableness.

"It is the client's right to expect that his lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf

of the client and in undertaking representation of the client's interests." Frazer v. United States 18 F.3d 778, 785 (9th Cir.1994).

In the context of guilty pleas, the U.S. Supreme Court announced that counsel must give objectively reasonable advice before the presumption of effectiveness will be applied. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366 (1985). Ineffective assistance of counsel at the plea stage of a proceeding will render the plea involuntary, and hence invalid. Id. at 56, 106 S.Ct. at 369. In order to satisfy the "prejudice" requirement, the Petitioner must show that a reasonable probability exists that, but for counsel's errors, he would not have entered into the plea agreement. Id. at 59. The Seventh Circuit has recognized that a defendant who has received ineffective assistance during plea proceedings "'cannot be bound by his plea, because a plea of guilty is valid only if made intelligently and voluntarily.'" United States v. George, 869 F.2d 333, 335-336 (7th Cir. 1989) (citing, Downs-Morgan v. United States, 765 F.2d 1534, 1538 (11th Cir. 1985).

Where a defendant ultimately enters a guilty plea, counsel owes a duty to apprise his client "of an understanding of the law in relation to the facts of the case so that he may make an informed choice between accepting the prosecutor's offer and pleading guilty or going to trial." George, 869 F.2d at 336 (citing Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984). In fulfilling this duty, an attorney must investigate his client's case. Strickland, 466 U.S. at 691.

Proper investigation requires an attorney to consult with the client on matters regarding defense strategy. Florida v. Nixon, 543 U.S. 175, 179 125 S.Ct. 551, 555 (2004). The courts have recognized that, in certain circumstances, counsel's failure to properly investigate would

amount to ineffective assistance of counsel requiring a reversal of the conviction. Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir. 1982).

In the instant matter, the Petitioner's counsel failed to investigate or explain possible defenses available to the Petitioner. In essence, rather than investigating the Petitioner's case, counsel presented a guilty plea as the only choice available to the Petitioner. The Petitioner informed counsel that he wished to proceed to trial. (Williams Affidavit). The Petitioner also informed his family members that this was his desire. (Williams Affidavit). In communications with the Petitioner's family members, counsel stated that he would not take the Petitioner's case to trial. (Williams Affidavit). Counsel informed the Petitioner that he could not defend the felony murder count, because the Petitioner had stolen a car and that act constituted a forcible felony and he would certainly be found guilty. (Williams Affidavit). Counsel even went so far as to inform the Petitioner that he was certain that he would be found guilty because he had talked to the judge, and that he had to take the deal if he ever wanted to see his family again. (Williams Affidavit). Counsel did not discuss any potential defenses to the charged offenses. (Williams Affidavit).

Clearly, counsel failed to properly investigate by failing to investigate or discuss with the Petitioner possible defenses and failing to present proceeding to trial as a possible alternative to pleading guilty. By assuring the Petitioner that a trial would certainly result in a conviction as charged, the Petitioner was not given the opportunity to make an informed choice of whether to plead guilty. By stating that the Petitioner would surely be convicted of felony murder because he had stolen a car, and that such an act constituted a forcible felony, counsel misrepresented the law. As such, counsel's representation fell below an objective standard of reasonableness.

B.   **The Petitioner was Prejudiced by Counsel's Failures.**

A court reviewing a claim of ineffective assistance must determine whether a reasonable probability exists that, but for counsel's unprofessional errors, the results of the proceedings would have been different or whether the result was fundamentally unfair or unreliable. Lockhart v. Fretwell, 113 S.Ct. 838 (1993). Ultimately, the Strickland test requires courts to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding. Id. at 844.

Due to counsel's failure to discuss and explain potential defenses, the Petitioner agreed to enter a guilty plea. Had the Petitioner been made aware of the alternative course of action and potential defenses that could be raised, the Petitioner would not have agreed to plead guilty. (Williams Affidavit). Therefore, counsel's error affected the outcome of the case and thus resulted in prejudice.

This ineffective assistance led to the Petitioner entering an unknowing and involuntary plea. A guilty plea must be made knowingly, voluntarily, and intelligently. Boykin v. Alabama, 395 U.S. 238 (1969). In order to plead voluntarily, a defendant must know the direct consequences of his plea, including the actual value of any commitments made to him. Mabry v. Johnson 104 S.Ct. 2543, 2547 (1984). "A valid guilty plea should represent a voluntary and intelligent choice among the alternative courses of action open to the defendant." United States v. Fox, 941 F.2d 480, 484 (7th Cir. 1991)(citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). *See also*, Banks v. United States, 920 F.Supp. 688 (E.D.Va.1996) (AThe validity of a guilty plea hinges on whether it was a voluntary and intelligent choice among alternative courses of action open to the defendant@). Since the Petitioner did not receive the benefit of being made aware of

12

potential defenses, a benefit which should be received through the assistance of counsel, he did not have the opportunity to make an intelligent choice among alternative courses of actions.

Specifically, counsel failed to apprise the Petitioner of the defense that the Petitioner's alleged conduct could only justify a conviction for reckless homicide, and not first degree murder. (Williams Affidavit). In order to maintain such a defense, it would have been necessary to show that the Petitioner did not (1) intend to kill or do great bodily harm to an individual (720 ILCS 5/9-1(1)); (2) perform acts which he knew created a strong possibility of death or great bodily harm to an individual (720 ILCS 5/9-1(2); attempt or commit a forcible felony (720 ILCS 5/9-1(3)). Reckless homicide is committed where a person unintentionally kills an individual without lawful justification through the operation of a motor vehicle. 720 ILCS 5/9-3(a). Reckless homicide is a class 3 felony. 720 ILCS 5/9-3(d)(2). The corresponding penalty for reckless homicide is 2-5 years. 730 ILCS 5/5-8-1(6). Understandably, the Petitioner would not have agreed to plead guilty, had he been informed of this available defense. (Williams Affidavit).

The Illinois courts have determined that situations such as the one giving rise to the charges against the Petitioner are properly prosecuted as reckless homicide cases. In People v. Belk, 203 Ill.2d 187 (2003), the Supreme Court of Illinois was faced with a case analogous to that of the Petitioner. In Belk, the defendant stole a van and then led police on a high speed chase. Id. at 189-190. The chase ended when the defendant drove and crashed the van into another vehicle. The occupants of the other vehicle died as a result of the injuries sustained in the collision. Id. at 190. Belk was originally convicted of two counts of felony murder, as the trial court determined that "Belk's commission of the felony of aggravated possession of a stolen motor vehicle proximately caused the death of the victims." Id. On appeal, the appellate court held "that the

evidence presented at trial demonstrated that while Belk acted recklessly, his actions did not fall within the purview of the felony-murder statute." Id. at 191. The appellate court determined that the evidence did not show that Belk intended violence or acted intentionally in causing the van to strike the other vehicle. Id. The conviction was then reduced to reckless homicide. Id. The State appealed, arguing that the felony-murder rule should have applied. Id.

The Supreme Court of Illinois affirmed the appellate court's decision, holding that aggravated possession of a stolen vehicle is not a forcible felony and therefore does not invoke the felony-murder rule. Id. at 197-198. This conclusion was in keeping with the statutory definition, which does not list aggravated possession of a stolen vehicle as one of the enumerated felonies which constitutes a forcible felony. 720 ILCS 5/2-8.

When the Petitioner presented this issue of counsel's ineffectiveness to the Appellate Court of Illinois, the court stated that, while the facts of the Petitioner's case are similar to those in Belk, the Petitioner "failed to make any factual allegations in his petition or point to any evidence in the record that showed that he was merely acting recklessly and not knowingly and intentionally when he crashed in to the other vehicle." (Order of the Appellate Court of Illinois, at 9). These statements by the appellate court are completely inaccurate. Nonetheless, this erroneous conclusion served as the basis for the court's affirmation of the lower court's denial of the Petitioner's post-conviction petition. As such, the court's decision constituted a "decision that was based on an unreasonable determination of the facts." 28 U.S.C. Sec. 2254(d)(2).

In the memorandum accompanying his petition for post-conviction relief, the Petitioner stated that his only motive was to elude the police officers, that the collision was an accident, and that the accident was the result of the operation of the vehicle at excessive speeds.

(Memorandum in Support of Petition, at 6-7). Therefore, contrary to the appellate court's assertions, the Petitioner did, in fact, make factual allegations that he was merely acting recklessly and not knowingly and intentionally when he crashed in to the other vehicle. Additionally, the factual record which was recited at the plea hearing demonstrates that the incident was clearly accidental. (Transcript of Proceedings, 3/27/01, at 4-6). Just as the collision in Belk resulted from the loss of control caused by driving at an excessive rate of speed, the collision in the instant case resulted from the reckless failure to observe the red light. (Id. at 5).

In relying upon counsel's misrepresentations of law and the complete lack of explanation of possible defenses, the Petitioner was denied the opportunity to make an informed decision to either enter a guilty plea or proceed to trial. With counsel misinforming him that he would never see his family again unless he pleaded guilty, it only appeared that he had one possible course of action. Had he been informed of the defenses he could have asserted, he would not have agreed to plead guilty. (Williams Affidavit).

As the Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment leading to an unknowing and involuntary guilty plea, the Petitioner asks that this Court vacate the Petitioner's convictions and sentence and set this case for re-hearings consistent with the guarantees offered by the Constitution.

IV.  **The Petitioner was Denied his Sixth Amendment Right to Effective Assistance of Counsel when Counsel Failed to File a Notice of Appeal.**

"The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582 (1986). An accused is entitled to assistance of counsel on an appeal as a matter of right. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814 (1963). Furthermore, the Supreme

15

Court has recognized that "the right to counsel is the right to the *effective* assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449 (1970) (emphasis added). The right to effective assistance of counsel at any critical stage encompasses the right to have an advocate for one's cause. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, (1940). Counsel must "subject the prosecution"s case to meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 2947 (1984). The right to effective counsel extends to direct appeal. A defendant in a criminal case has a Sixth Amendment **right** to the effective assistance of **counsel** on direct **appeal.** Evitts v. Lucey, 469 U.S. 387, 406, 105 S.Ct. 830 (1985).

The Supreme Court established the test for determining whether a defendant has received the effective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2055 (1984). The High Court stated that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The Strickland test has two components, both of which must be satisfied to establish that defense counsel's performance was ineffective. First, "the defendant must show that the counsel's performance was deficient." Id. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. Id. The test to establish a claim that appellate counsel was ineffective for failing to pursue claims on direct appeal is the same Strickland standard. See 466 U.S. at 688, 694; See also Smith v. Robbins, 528 U.S. 259, 120 S.Ct. 746, 764 (2000). Although reviewing courts should accord appellate counsel a "presumption that he decided which issues were most likely to afford relief on appeal," Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993), the U.S. Supreme Court has recently reiterated that "when ignored issues are clearly stronger than those presented,

will the presumption of effective assistance of counsel be overcome." Robbins, 120 S. Ct. at 765 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

"It is now generally accepted that counsel's failure to file a notice of appeal, either when expressly requested to do so by the client or merely when the client has not consented to the failure, constitutes ineffective assistance of counsel." Chance v. United States, 103 F.3d 128 (6th Cir. 1996) (citing United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993); United States v. Stearns, 68 F.3d 328, 330 (9th Cir. 1995); Estes v. United States, 883 F.2d 645, 648-49 (8th Cir. 1989)). "In fact, several courts have held that such a failure is a deprivation, not of the effective assistance of counsel, but of any assistance of counsel on appeal." Chance, 103 F.3d 128 (citing United States v. Nagib, 56 F.3d 798, 801 (7th Cir.1995); United States v. Tajeddini, 945 F.2d 458, 466 (1st Cir. 1991), *cert. denied*, 505 U.S. 1211 (1992)).

"Such a failure is considered to be prejudicial *per se* and the defendant is not required to show that a direct appeal would have been successful, or even to suggest what issues may have been omitted on direct appeal." Chance, 103 F.3d 128, citing United States v. Guerra, 94 F.3d 989, 994 (5th Cir. 1996); Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994) ("If the defendant told the lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of any assistance of counsel on appeal.") In cases where an attorney fails to file a notice of appeal despite the client's desire to do so, prejudice under Strickland need not be shown. United States v. Guerra, 1996 U.S. App. LEXIS 24982, *12 (5th Cir., filed September 25, 1996) (copy of opinion attached hereto).[1]

---

[1] This substitute opinion replaced the court's prior opinion, United States v. Guerra, 94 F.3d 989 (5th Cir. 1996).

17

The U.S. Supreme Court has recently decided the proper framework for evaluating an ineffective assistance of counsel claim based on counsel's failure to file a notice of appeal without his client's consent. The High Court held that one-half of the Strickland v. Washington test applies to such a claim. Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000). Regarding deficient performance, a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner. Id. at 477. The Flores-Ortega Court found that even where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the attorney could nevertheless be found to have provided deficient performance based on the facts of the case. Id. at 478.

In the present case, the Petitioner was entitled to file a direct appeal of his conviction and sentence in this matter and expressly noted to his former attorney that he wished to do so (Williams Affidavit). The Petitioner advised his attorney that he wanted to appeal and that he wanted his help in doing so. (Williams Affidavit). Specifically, the Petitioner requested that counsel file a notice of appeal. (Williams Affidavit). Despite these direct requests, counsel failed to file a notice of appeal on his behalf, thereby falling fall short of a reasonable standard of representation.

Because his former attorney did not file the notice, the first prong of the Strickland test is met, and the second prong need not be shown. See Guerra, *12; See also Roe, 528 U.S. at 484. Counsel's actions completely denied him of an appeal and entitle the Petitioner to a presumption of prejudice. A complete denial of the opportunity to appeal certainly constitutes the deprivation of effective assistance of counsel. Accordingly, the Petitioner contends that his appellate rights

should be reinstated in the interests of justice and based upon the clear guarantee of the Sixth Amendment.

The Petitioner's counsel decided on his own that the Petitioner should not appeal. It is the defendant, however, who has the ultimate authority to make fundamental decision whether to take an appeal. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. Roe, 528 U.S. at 476-77. Again, in cases where an attorney fails to file a notice of appeal despite the client's desire to do so, prejudice under Strickland need not be shown. In sum, because the Petitioner expressly told his former attorney that he wanted to appeal, but counsel did not file a notice of appeal and the Petitioner learned of that fact only several weeks later, the Petitioner's appellate rights should be reinstated.

V.　　**The Petitioner Is Entitled to an Evidentiary Hearing on These Matters.**

The Petitioner contends that he is entitled to an evidentiary hearing on these issues. In order to be granted an evidentiary hearing, a habeas corpus petition must allege sufficient facts which, if true, would support the conclusion of law advanced. Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, 785 (1963); Bruce v. Duckworth, 659 F.2d 776 (7th Cir. 1981). A petition for habeas corpus requires a hearing unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. Dalton v. Battaglia, 402 F.3d 729 (7th Cir. 1970).

In the present case, the Petitioner contends that he has set forth facts in his petition that entitle him to relief. Therefore, at a minimum, the Court should order an evidentiary hearing in this matter.

## VI.  CONCLUSION

For the foregoing reasons, the Petitioner respectfully requests that this Honorable Court grant his motion for post-conviction relief or at a minimum, grant him an evidentiary hearing.

Respectfully submitted,

_____
Gerardo S. Gutierrez, Esq.
Attorney for the Petitioner
53 W. Jackson Blvd., Ste. 1122
Chicago, Illinois 60601
(312) 786-9970 telephone
(312) 922-7920 facsimile