UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN WILLIAMS, | * | |
| | * | No. 07 Cv 7238 |
| Petitioner-Defendant, | * | |
| | * | |
| v. | * | |
| | * | |
| ROGER E. WALKER, Director, | * | The Honorable |
| Illinois Department of Corrections | * | Samuel Der-Yeghiayan |
| | * | Judge Presiding |
| Respondent-Plaintiff. | * | |

**PETITIONER SHAWN WILLIAMS' RESPONSE TO THE
GOVERNMENT'S MOTION TO DISMISS § 2255 PETITION**

COMES NOW the Petitioner, SHAWN WILLIAMS, who submits the following Response to the Government's Motion to Dismiss**.** The government has asserted that the petition should be dismissed as untimely. In support of this motion, the government essentially makes four arguments:

1. That Mr. Williams' state post-conviction motion was filed after the expiration of the one-year time period under 28 U.S.C. § 2244(d)(1)(A), and therefore did not effectively toll the limitations period;

2. That 28 U.S.C. § 2244(d)(1)(B) does not supply the applicable starting date for any of Mr. Williams' claims;

3. That Mr. Williams' due process claim is not timely under 28 U.S.C. § 2244(d)(1)(D); and

4. That Mr. Williams is not entitled to equitable tolling.

It is interesting to note the amount of emphasis the government has placed on the second argument. Indeed the government used nearly four pages, cited to at least seven different cases,

and thoroughly dissected the statutory language of 28 U.S.C. § 2244(d)(1)(B). However, Mr. Williams never raised any argument concerning this statutory provision, and does not contest that issue in this response. On the other hand, the government has also asserted that Mr. Williams' due process claim is not timely under 28 U.S.C. § 2244(d)(1)(D). Mr. Williams' does contest that conclusion - one which the government has not supported through citations to the law.

For the following reasons, the government's motion should be denied.

I. **MR. WILLIAMS' PURSUIT OF POST-CONVICTION RELIEF THROUGH THE STATE COURTS DID EFFECTIVELY TOLL THE RUNNING OF THE LIMITATIONS PERIOD UNDER 28 U.S.C. § 2244.**

In this portion of Mr. Williams' responsive brief, he will address the first and third arguments outlined above. As noted previously, he does not dispute the government's assertions regarding the second argument. As noted in Mr. Williams' Memorandum of Law, the "time during which a properly filed application for State post-conviction" action "is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). The government acknowledges that Mr. Williams did file a post-conviction petition on October 27, 2003. That post-conviction petition was denied on January 15, 2004, and Mr. Williams then appealed to the Supreme Court of Illinois, which denied his petition for leave to appeal on September 27, 2006.

In his memorandum, Mr. Williams argued that this date, September 27, 2006, should be looked upon as the starting date for his first substantive issue: that his right to due process was denied when the state court denied relief on his post-conviction petition, without first conducting an evidentiary hearing. The reason for this was that the issue did not arise until January 15, 2004, when the state court denied his claims. The argument regarding the pendency of the state

post-conviction petition was only intended to account for the time between January 15, 2004 and September 27, 2006, when the Supreme Court of Illinois issued its ruling.

The basis for this argument is noted by the government, in its third argument, pertaining to the applicability of 28 U.S.C. § 2244(d)(1)(D). That sub-section provides for the one-year limitation to begin running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Here, the factual predicate of Mr. Williams' due process claim was the failure of the state court to conduct an evidentiary hearing before ruling on his post-conviction petition. This did not occur until January 15, 2004. Of course, the one year period was tolled while Mr. Williams appealed to Illinois Supreme Court, an appeal which became final on September 27, 2006.

Remarkably, the government has argued that the factual predicate for Mr. Williams' claim existed "as early as March and April of 2001 (when [Mr. Williams] pled guilty and trial counsel supposedly failed to file a notice of appeal). (Motion to Dismiss, at 11-12). That conclusion is the government's only asserted basis as to why subsection (d)(1)(A) supplies the applicable starting date rather than (d)(1)(D). Yet Mr. Williams has asserted that the denial of his due process claim occurred on January 15, 2004, when the state court denied his petition without first conducting an evidentiary hearing. It is unfathomable to believe that such an assertion could have been made nearly three years before this occurred.

Clearly, the factual predicate underlying Mr. Williams' due process claim did not occur until January 15, 2004. The one year time limitation began on that date, but was tolled until the conclusion of Mr. Williams' appeal in state court, pursuant to 28 U.S.C. § 2244(d)(2).

Therefore, Mr. Williams respectfully requests that the government's motion to dismiss be denied and that this Court consider the merits of the instant petition.

## II.     MR. WILLIAMS IS ENTITLED TO EQUITABLE TOLLING

Equitable tolling is appropriate where "strict application of the statute of limitations would be inequitable." Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998). As noted by the government, the U.S. Supreme Court noted that equitable tolling could be invoked where a petitioner had diligently pursued his rights and extraordinary circumstances stood in his way. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

In the instant case, these conditions have been met. The government argues that misconduct on the part of counsel is insufficient to establish such extraordinary circumstances. (Motion to Dismiss, at 13; citing Powell v. Davis, 415 F.3d 722, 727 (7th Cir. 2005)). First, it should be pointed out that other circuits have found that counsel's misconduct "may constitute 'extraordinary circumstances' that justify equitable tolling." Fleming v. Evans, 481 F.3d 1249, 1256 (10th Cir. 2007) (citing United States v. Martin, 408 F.3d 1089, 1093 (8th Cir. 2005); Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003); Baldayaque v. United States, 338 F.3d 145, 152 (2nd Cir. 2003); and United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002). In Fleming, the Tenth Circuit joined those other circuits, "holding that sufficiently egregious misconduct on the part of a habeas petitioner's counsel may justify equitable tolling of the AEDPA limitations period." Fleming, 481 F.3d at 1256.

In the instant case, circumstances were so extraordinary as to justify the delay in filing the instant petition. From the beginning, Mr. Williams' attempts to challenge the trial court's judgment have been thwarted. His attorney ignored his requests and failed to file a notice of appeal. Without proper advisement from counsel, Mr. Williams waited too long to file a motion

to withdraw his guilty plea.  Then his state post-conviction petition was dismissed without even affording him an evidentiary hearing.  Mr. Williams was effectively denied the opportunity to challenge the judgment in state court.

The government appears to concede that Mr. Williams has diligently pursued his rights.  Such concession is appropriate, given the great lengths Mr. Williams has gone to in pursuing relief.  The only avenue of relief not pursued by Mr. Williams was a direct appeal, and that was only due to counsel's failure to follow his clear instruction to file a notice of appeal.  Despite that error causing him to have to fight an uphill battle, Mr. Williams has done everything possible to pursue relief.  Now he has only this Court to turn to in order to seek review of his substantial issues.

As noted in Mr. Williams' memorandum of law, strict application of the statute of limitations would be inequitable.  Counsel's failure to file a notice of appeal seriously limited Mr. Williams' time for filing a timely petition.  If this court declines to consider Mr. Williams' issues based on a strict application of this limitation period, he will once again be deprived of the opportunity to have his arguments heard.  Mr. Williams therefore respectfully requests that this Court apply the doctrine of equitable estoppel and consider Mr. Williams' meritorious issues.

### III.    28 U.S.C. § 2244 DOES NOT REQUIRE THE DISMISSAL OF THE PETITION.

In addition to the arguments outlined above, this Court has the discretionary authority to hear Mr. Williams' claims.  Even though § 2244(d)(1) grants this Court the power to dismiss a petition without consideration, where a petition is not filed within the one-year time period, that deadline does not mandate dismissal.  The one-year limitation period in § 2244 is merely a grant of the power to dismiss.  District courts have the inherent power to control their dockets, and this power certainly extends to cases involving post-conviction matters, and affords the courts the

authority to grant additional time.  <u>Chambers v. Armontrout</u>, 16 F.3d 257, 261 n.2 (8th Cir. 1994) (district court did not err in granting additional time); <u>Moore v. Zant</u>, 972 F.2d 318, 321 (11th Cir. 1992) (per curiam); <u>Thompson v. Housing Authority</u>, 782 F.2d 829, 831 (9th Cir.), *cert. denied*, 479 U.S. 829, 93 L. Ed. 2d 60, 107 S. Ct. 112 (1986); <u>Frazier v. Roberts</u>, 441 F.2d 1224, 1229 (8th Cir. 1971) (per curiam) (noting that district court could grant extension of time for retrial).  *See also* <u>Edwards v. Cauthron</u>, 1997 U.S. App. Lexis 25259 (10th Cir. Sept. 18, 1997) (unpublished) (affirming an order granting an extension of time for the state to comply with conditional writ because a federal court has the "inherent authority ... to manage its docket," including the "discretion to grant or deny continuances or extensions of time").  That inherent power to control dockets and hear cases extends to determining whether to hear an out-of-time motion filed under § 2254.  Although dismissal is one of the sanctions the district court can impose under that power, <u>Link v. Wabash Railroad Co</u>., 370 U.S. 626, 8 L.Ed.2d 734, 82 S.Ct. 1386 (1962), it is a harsh remedy and should only be imposed in extreme circumstances.  <u>Henderson v. Duncan</u>, 779 F.2d 1421, 1423 (9th Cir. 1986).  Thus, it is within this court's discretion to hear this petition and adjudicate Mr. Williams' claims on the merits.

Based on the foregoing, Mr. Williams' valid issues should certainly be considered and decided on the merits.  Therefore, Mr. Williams respectfully requests that the government's motion to dismiss be denied and that this Court consider the merits of the instant petition.

**IV.    THE DISMISSAL OF THE INSTANT PETITION ON THE BASIS OF TIMELINESS WOULD CONSTITUTE A VIOLATION OF MR. WILLIAMS' RIGHT TO DUE PROCESS AND A VIOLATION OF SUSPENSION CLAUSE OF THE UNITED STATES CONSTITUTION.**

In evaluating due process claims, a court inquires whether the practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as

fundamental." Snyder v. Massachusttes, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). As stated by Justice Frankfurter, due process

> embodies a system of rights based on moral principles so deeply imbedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history. Due process is that which comports with the deepest notions of what is fair and right and just.

Solesbee v. Balkcom, 339 U.S. 9, 16, 70 S. Ct. 457, 461, 94 L. Ed. 604 (1950).

There can be little doubt that the right to file a petition for writ of habeas corpus is deeply ingrained in the American system of justice, as the right to such a filing was expressly protected in the United States Constitution. The Suspension Clause of the United States Constitution provides that "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. 1, Sec. 9, cl. 2. n1. The present day writ of habeas corpus, the "common law world's 'freedom writ'" and that "highest safeguard of liberty," Smith v. Bennett, 365 U.S. 708, 712, 6 L. Ed. 2d 39, 81 S. Ct. 895 (1961), traces its origins to English laws dating back to 1166. See Michael O'Neill, On Reforming the Federal Writ of Habeas Corpus, 26 Seton Hall L. Rev. 1493, 1495-96 (1996) (citing Assize of Clarendon, enacted in reign of King Henry II). The "great object of [the writ of habeas corpus] is the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error, to examine the legality of the commitment." Ex Parte Watkins, 28 U.S. 193, 202, 7 L. Ed. 650 (1830). The writ, along with the right to trial by jury, is among the most fundamental features distinguishing our free society from a police state, where unbridled and arbitrary imprisonment is used as an instrument of tyranny. See Johnson v. United States, 333 U.S. 10, 17 n.8, 92 L. Ed. 436, 68 S. Ct. 367 (1948).

In <u>Ex Parte Bollman</u>, 8 U.S. 75, 2 L. Ed. 554 (1807), Chief Justice John Marshall stated that the habeas provisions of the Judiciary Act were a result of Congress' perceived "obligation of providing efficient means by which this great constitutional privilege should receive life and activity," <u>id</u>. at 95, thus implicitly rejecting a view that the Suspension Clause is intended only to protect the habeas jurisdiction of the States from Federal encroachment. Marshall's opinion "gives no hint that the Clause rests on federalism, as opposed to individual liberty and separation-of-powers concerns." <u>Id</u>. at 876.

By the time of the Civil War and Reconstruction, Supreme Court jurisprudence had provided some answers to questions about the meaning of the Suspension Clause. In 1867, Congress made the writ generally available in "all cases where any person may be restrained of his or her liberty in violation of the Constitution, or of any treaty or law of the United States." Act of Feb. 5, 1867, ch. 28, 14 Stat. 385.

Near the middle of this century, the U.S. Supreme Court interpreted that provision to allow a final judgment of conviction in a state court to be collaterally attacked on habeas. See, e.g., <u>Waley v. Johnston</u>, 316 U.S. 101, 86 L. Ed. 1302, 62 S. Ct. 964 (1942) (per curiam); <u>Brown v. Allen</u>, 344 U.S. 443, 97 L. Ed. 469, 73 S. Ct. 397 (1953). The Court has assumed that the Suspension Clause of the U.S. Constitution refers to the writ as it exists today. See <u>Swain v. Pressley</u>, 430 U.S. 372, 384 51 L.Ed.2d 411, 97 S.Ct. 1224 (1977)(Burger, C. J., concurring in part and concurring in judgment).

In the instant case, the government seeks to prevent this Court from considering Mr. Williams' claims, simply based upon the strict application of the one-year deadline. To do so would unconstitutionally suspend the writ of habeas corpus and would constitute a denial of Mr.

Williams' right to due process. Therefore, Mr. Williams respectfully requests that the government's motion to dismiss be denied and that this Court consider the merits of the instant petition.

## CONCLUSION

For the above stated reasons, Mr. Williams prays that the government's motion to dismiss be denied.

Respectfully submitted,

/s/ Gerardo S. Gutierrez
Attorney for the Petitioner
53 W. Jackson Blvd., Ste. 1122
Chicago, Illinois 60604
(312) 786-9970  voice
(312) 922-7920 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion and Memorandum of Law appended hereto has been sent this 25th day of February, 2008, by regular U.S. Mail with sufficient postage affixed thereto to insure delivery thereof to Michael R. Blankenheim, Assistant Attorney General, 100 West Randolph Street, Chicago, IL 60601-3218.

/s/ Gerardo S. Gutierrez
Attorney for the Petitioner